I am unable to agree with the finding of facts and the application of the law contained in the majority opinion.
While the majority opinion seems to concede that there might have been some negligence on the part of the operators of the tug and barge, the principal ground on which liability is denied seems to be contributory negligence on the part of the deceased in handling the motor boat. In my opinion, the facts show negligence on the part of the operators of the tug and barge, and defendants have failed to prove their plea of contributory negligence on the part of the deceased.
The majority opinion correctly states the law to the effect that a duty rests upon large vessels not to travel on navigable waters at such a speed and in such a manner as to produce displacement waves or suction that will cause injury to other properly handled craft. The majority opinion also correctly quotes the law to the effect that in case of danger to a small boat and its occupants from displacement waves, it is the duty of the operators of the large vessel to take precautions to curtail the force and effect of these waves.
In determining whether or not there was negligence on the part of the operators of the tug and barge in this case, it is also proper to mention the law requiring lookouts on vessels, and I quote on that point from the first part of Section 268, 48 Am. Jur. p. 179, as follows:
"By the general maritime law, as enforced by courts of admiralty and recognized by allusion in the statutory rules of navigation, every vessel navigating the thoroughfares of commerce is required to have a lookout, who shall be a person other than the master, pilot, helmsman, or other officer or member of the crew, whose sole business shall be to look for and report vessels and dangers ahead. He must be a person of suitable experience and competence, properly stationed and vigilantly employed in the performance of his duty; and for a failure, especially at night, in any of those particulars leading to a collision, the vessel and her owners are liable, unless the other vessel is clearly at fault. Lookouts should generally be stationed forward, where the view forward or on the side to which they are assigned is not obstructed by the lights, rigging, or spars of the vessel; and in general, elevated portions, such as the hurricane deck, are not such favorable situations as those more usually selected on the forward deck, nearer the stem."
In the light of these principles of law, I think there is no doubt of the negligence of the operators of the tug and barge. Unless we are to disbelieve the testimony of *Page 752 
Ridnour, the only witness who was present and saw the accident, we must conclude that the waves from the tug and barge caused the motor boat to capsize. He says the barge was going at a good speed, and the swell was the highest he had ever met. The motor boat was going upstream on the west side of the stream, and the heavily loaded barge was coming down near the center of the stream, and, according to Ridnour, the rowboat hit the waves as it was passing, or about to pass, the barge, and while the motor boat was some 150 feet from the barge. The fact that the deceased was drowned at the place where Ridnour says the accident occurred is borne out by the fact that the body was found only a short distance below this point. I see no reason to doubt the testimony of Ridnour and find nothing to justify the intimation that the deceased might not have been drowned from the capsizing of the rowboat caused from the waves plowed up by the heavily loaded barge.
The question then arises, were the operators of the barge guilty of negligence in causing these waves? The barge was 28 feet wide and was heavily loaded with logs. It is obvious that the front of this barge plowing into the water displaced a large volume of water, and this water was thrown to the sides in the form of waves in the same manner in which a tractor plows the ground and throws the dirt to each side. Waves were produced by the barge, and, as is usually the case, quite a lot of suction was no doubt created by the operation of the propellers on the tug.
Had there been a proper lookout on this heavily loaded barge as the law above quoted requires, it is inconceivable that this lookout could not have seen this fishing boat coming up the stream on the starboard side of the barge. The operators of the barge are held to have seen what they should have seen, so it is immaterial whether a watchman was on the barge at the time or not, as it remains a fact that he did not see what he should have seen. He should have seen this fishing boat coming upstream, and should have seen the waves thrown out by the barge. Ridnour says that before the fishing boat got even with the barge, he waved at the barge and screamed a warning, but no one on the barge heeded his warning. I see no reason to disbelieve this statement of Ridnour. Had there been a proper lookout on the barge, there was ample time for proper signals to be given to the pilot to slow down and take the necessary precautions to meet the situation. Even though there was not sufficient time after this warning for the barge to be slowed down and the force of the waves checked, the lookout should have seen the trouble the fishing boat was encountering in the waves, and means of rescuing the occupants of the fishing boat could have been employed. It is inconceivable to me why a man on the top of these logs or stationed somewhere near the front of the barge as he should have been could not have seen the fishing boat as it approached and became entangled in the waves within one hundred and fifty feet on the starboard side of the barge.
Whether or not the high waves were caused from the speed of the barge, its displacement of water, or the load it was carrying, it remains a fact that these waves were unusually high as indicated not only from the statement of Ridnour, but also from the fact that these waves did capsize the fishing boat when similar boats had not been capsized in passing barges on this river.
The majority opinion holds that the deceased Tolle was guilty of contributory negligence in not getting out of the way of these waves by steering his rowboat toward the west bank of the river, or running it out into the water lilies on that side of the stream. This holding is based on what I conceive to be a misinterpretation of the law relative to the duty of the operator of a small boat to avoid waves produced by a larger vessel on a navigable stream. This holding seems to be based largely on a statement made in the latter part of Section 280, 48 Am.Jur. p. 189. After stating the liability of vessels for injury caused from wave wash to a great variety of smaller craft, including scows, barges, canalboats, etc., the statement is made that, "The same rule has been held applicable to rowboats, where those in charge of a steamer had notice of the peril from her displacement waves, although some uncertainty has been *Page 753 
expressed by the authorities as to the extent of the steamer's general duty to guard against the effect of her swells upon rowboats, in view of their ready mobility."
As I understand this rule, the operators of a large vessel who are or should be aware of the danger to the occupants of a rowboat from swells created by the larger vessel, have the duty to take necessary precautions to lessen the danger. A rowboat has as much right to be on a navigable stream as a larger vessel. There is no duty on the part of the operator of a skiff or motor boat to run from a larger vessel just because the latter may create strong swells. Section 281 of 48 Am.Jur. p. 190, treating of contributory negligence on the part of the operator of a damaged boat from the swells from another vessel, concludes with the following sentence: " Persons in a small boat have, however, a right to assume that the navigators of an approaching steamer will observe their duty to avoid the infliction of injury upon the smaller craft, and if the latter would have been safe in the absence of an unusual disturbance in the water, and the water at the time the steamer approaches is smooth, the occupants of the small boat cannot be adjudged guilty of contributory negligence merely because the boat is capsized by waves due to the continuous revolution of the propeller or wheels of the steamer."
The deceased had a right to assume that the barge would not throw out dangerous waves as he approached to pass it at a safe distance in what would have been practically smooth water but for the swells created by the barge. The rowboat was not far from the barge, according to the testimony of Ridnour, when the unusual nature of the waves from the barge could be observed. Ridnour endeavored to signal the barge with no response, and it was then too late for the deceased to steer his boat to the west bank, or into the water lilies, if it was his duty to do so after he discovered that no efforts were to be made by the operators of the barge to relieve the situation. The deceased turned his boat to meet the waves which seems to be the proper way to meet a wave wash. Had he continued on parallel with the barge, the waves would have struck his boat on the side and more easily washed over into the boat and capsized it.
For these reasons, I respectfully dissent from the majority opinion which holds that there is no liability on the part of defendants.